IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:17-688-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| CHRISTOPHER D. FULTON | ) | |
| _____ | ) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in his sentence (ECF No. 1388) pursuant to the First Step Act of 2018[1] and 18 U.S.C. § 3582(c)(1)(A). Seeking compassionate release, the defendant states that his current medical problems constitute extraordinary and compelling reasons for his immediate release.

The government has responded in opposition, arguing that the defendant has not shown an extraordinary and compelling reason for release. Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release. The defendant did not reply to the government's response.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

---

[1] Pub. L. 115-015 (S. 756), 132 Stat. 015 (Dec. 21, 2018).

1

STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever

>is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden

3

to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

### *Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on

their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

The government has not raised exhaustion as an affirmative defense in this case. However, the defendant attests in his motion that he submitted a request for compassionate release to the Warden on May 13, 2021, and he did not receive a response within the 30-day time frame. Thus, the court will proceed to review the matter on the merits.

## DISCUSSION

### I. *The Defendant's Medical Conditions*

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus. *See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

In his motion (ECF No. 1388), the defendant contends that he suffers from hypertension, obesity, prediabetes, abnormal kidney function, and post traumatic stress disorder. He also asserts that he needs to be released immediately so that he can be with his family.

As indicated above, the defendant raises a number of medical conditions that he contends warrant his immediate release. He does not mention the ongoing COVID-19 pandemic and the government suggests that for this reason, the court should not consider his conditions in connection with the pandemic. This court respectfully disagrees. Even though the defendant did not mention COVID in his motion for compassionate release, this court must nevertheless take judicial notice that the pandemic is not yet over and that some of the defendant's conditions are listed on the CDC memorandum of conditions that might be exacerbated by exposure to COVID-19.  Thus, while the government points out that the defendant has not raised COVID-19 issues and also points out that the defendant has refused vaccination, this court will nevertheless proceed to consider the defendant's motion on its merits.

The Presentence Report (PSR) (ECF No. 1197) prepared in connection with the defendant's mid-2020 sentencing recited the defendant's medical conditions at Paragraph 67 as follows:

> Christopher Fulton reported he is in overall good physical health. He denied having any significant illnesses or injuries in the past. Since his incarceration at the Lexington County Detention Center, he has been experiencing high blood pressure, headaches, and chest pain. However, he has not yet been diagnosed with any medical conditions as a result of these symptoms.

*Id*. at 18.

The government points out that the defendant's medical records indicate that all of his conditions are being appropriately managed by the BOP. According to the defendant's recent medical records, the defendant was seen by the BOP medical staff who reported that the defendant was "in no acute distress" and that he "denied chest pain, shortness of breath" and that he "ambulates without difficulty."

On this record, the court determines that the defendant has, in fact, demonstrated an extraordinary and compelling reason for consideration of his release. The defendant's hypertension, prediabetes and obesity, all constitute medical conditions that might be exacerbated by COVID-19.

This determination, however, does not end the inquiry. Under Fourth Circuit guidance, this court will now make an individualized assessment of the defendant's case, with specific attention to the 18 U.S.C. § 3553(a) factors. This review will also consider the defendant's post-sentencing conduct while incarcerated, and any other arguments advanced

by the defendant in his memoranda. The court will address the § 3553(a) factors in turn.

    1. *Nature and Circumstances of the Offense*. The defendant served as a high-ranking member of a large-scale drug trafficking organization which distributed significant quantities of heroin and cocaine throughout the Columbia area of South Carolina. Fulton oversaw drug storage activities, facilitated drug distribution, and collected drug proceeds for the organization. Multiple codefendants and cooperating witnesses identified Fulton as the individual in charge of storing heroin and cocaine for the organization at his home in Columbia. Witness statements and surveillance further established that Fulton regularly distributed quantities of cocaine and heroin to individuals from his home and collected drug proceeds on behalf of the organization. During the execution of a federal search warrant at Fulton's residence, law enforcement seized 6 firearms and drug distribution paraphernalia. One co-defendant admitted he transported at least 36 kilograms of heroin and at least 10 kilograms of cocaine to South Carolina for the drug trafficking organization and identified Fulton as the individual responsible for storing the drugs on behalf of the organization.

    Based on the evidence gathered and interviews conducted during the course of the investigation, Fulton was held accountable for a total of 38,000 kilograms of converted drug weight for the purpose of establishing his base offense level based on the quantities of drugs which were within the scope of Fulton's jointly undertaken criminal activity, in furtherance of that criminal activity, and reasonably foreseeable in connection with the criminal activity.

The defendant was one of 16 defendants named in a 46-Count Second Superseding Indictment (ECF No. 513) filed in the District of South Carolina in July 2018. The defendant was specifically named in the following Counts:

Count 1: Conspiracy to possess with intent to distribute and distribute 1 kilogram or more of heroin, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 8461, and 851;

Counts 5,12: Use of a telephone communication facility to facilitate the commission of a felony under the Controlled Substances Act, in violation of 21 U.S.C. §§ 84l(a)(1) and 846; 843(b), and 18 U.S.C. § 2;

Count 31: Possession with intent to distribute and distribution of a heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c) [May 18, 2017];

Count 36: Possession with intent to distribute and distribution of a heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c) [June 2, 2017]; and

Count 39: Possession with intent to distribute and distribution of a heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c) [June 12, 2017];

Pursuant to a written Plea Agreement (ECF No. 775), the defendant pleaded guilty to Count 1.

The Presentence Report (PSR) (ECF No. 1137) indicated that the defendant's total offense level was 40[2] and his criminal history category was I. This yielded a Guideline sentence of 292 to 365 months imprisonment and 5 years of supervised release.

---

[2] The defendant received a 2-level enhancement for possession of a dangerous weapon (firearm) and a 2-level enhancement for maintaining a premises for the purpose of distributing heroin and cocaine.

At sentencing, however, the defendant withdrew four of his five objections to the PSR and the government agreed that the PSR overstated the drug weight attributable to the defendant. Also, the court gave the defendant credit for acceptance of responsibility, in contravention to the recommendation in the PSR. These actions resulted in a new total offense level of 35 instead of 40, and a new Guideline range of 168 to 210 months. The court then imposed a 168-month sentence—the low end of the Guideline range.

2. *History and Characteristics of the Defendant*. The defendant is 35 years old, and married with 4 children. He was born and raised in Sumter, South Carolina. He described having a great childhood. He has no criminal history. He admitted to the U.S. Probation Officer that he had used marijuana regularly since he was 15 and continued to use the substance while on bond for the instant federal offense.

The defendant graduated from High School and studied Business Administration for two years at Allendale University. He has prior employment experience as a construction inspector.

*Post-Sentencing Conduct*

The defendant has served less than 24 months of his 168-month sentence. He is currently housed at Edgefield Correctional Institution. His anticipated release date is March 2031.

While incarcerated, the defendant has earned his GED. He has taken approximately 11 educational courses since June 2021. He has also had various work details in camp

education, and admission and orientation.

The defendant has had two disciplinary infractions as recently as August 2022 for use of drugs/alcohol (100-level offense) and destroying property (300-level offense).

3. *Seriousness of the Crimes*. As evidence by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crime as very serious, fully supportive of a significant sentence. Suffice it to say that this court considers the defendant's crimes to be substantial.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant*. The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. The court views this as an important factor to be addressed in considering the present motion.

7. *Need to Avoid Unwarranted Disparity*. Viewing the defendant's sentence as compared with the culpability of the defendant and his associates, his imposed sentence was and is in line with the other co-defendants.

In sum, the § 3553(a) factors discussed above strongly militate against a sentence reduction at this time. The defendant was a high-ranking member of a large drug trafficking organization and was held accountable for multi-kilograms of heroine and cocaine. In addition, he elected to arm himself with a firearm and maintain a residence for the purpose of drug distribution while engaging in the conspiracy. He performed poorly while previously serving a term of supervision, to wit: the defendant's bond was revoked after he failed to withdraw from new criminal conduct by continually testing positive for marijuana.

## II. *Additional Factors Raised by the Defendant*

The defendant also asserts that his desire to be home with his family is a factor that this court should consider with regard to his motion for compassionate release. He has not shown the death or incapacitation of his spouse or a caregiver of his children. Thus, although the court is sympathetic with his desire to be with his family, the defendant's case presents no unusual factors with regard to family relationships such that an order of immediate release is appropriate.

## CONCLUSION

As noted earlier in this order, the court determines that the defendant has demonstrated an extraordinary and compelling reason for compassionate release relating to his medical conditions. Even so, the defendant's release at this time is not appropriate in light of this court's investigation of the record and individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct discussed herein. Moreover, the

defendant has served only a small portion of his sentence.

For the foregoing reasons, the motion (ECF No. 1388) is respectfully denied.[3]

IT IS SO ORDERED.

September 12, 2022  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge

---

[3] To the extent that the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")